STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (STATE BAR NO. 83013)
LISA M. SIMONETTI (STATE BAR NO. 165996)
JASON S. YOO (STATE BAR NO. 261114)
2029 Century Park East
Los Angeles, California 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959
Email: lacalendar@stroock.com

Attorneys for Defendant
   AMERICAN EXPRESS COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIN O'BRIEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS COMPANY,<br><br>Defendant. | Case No. 3:11-cv-01822-BTM-BGS<br><br>Assigned to the Hon. Barry T. Moskowitz<br><br>**NOTICE OF RECENT SUPPLEMENTAL AUTHORITY RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Complaint Filed: August 16, 2011 |

**TO THE COURT AND TO PLAINTIFF:**

**PLEASE TAKE NOTICE** that, on May 31, 2012, the United States District Court for the Southern District of California, in the matter entitled <u>Knutson v. Sirius XM Radio Inc.</u>, No. 12cv418 AJB (NLS), 2012 U.S. Dist. LEXIS 75698 (S.D. Cal. May 31, 2012), issued an Order granting defendant's motion to compel arbitration and dismissing plaintiff's claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227. A true and correct copy of the Court's Order is attached hereto as Exhibit "A."

Dated: June 7, 2012

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
LISA M. SIMONETTI
JASON S. YOO

By: _____/s/ *Lisa M. Simonetti*_____
        Lisa M. Simonetti

Attorneys for Defendant
  AMERICAN EXPRESS COMPANY

-1-
NOTICE OF RECENT SUPPLEMENTAL AUTHORITY
Case No. 3:11-cv-01822-BTM-BGS

LA 51548960v1

EXHIBIT A

LEXSEE

**Erik Knutson, Individually and on behalf of all others similarly situated individually and on behalf of other similarly situated, Plaintiffs, v. Sirius XM Radio Inc., Defendant.**

**Civil No. 12cv418 AJB (NLS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**2012 U.S. Dist. LEXIS 75698**

**May 30, 2012, Decided
May 31, 2012, Filed**

**CORE TERMS:** arbitration, customer agreement, arbitration agreements, arbitration provision, unconscionability, compel arbitration, subscription, unconscionable, telephone, class action, contractual, arbitrate, customer, binding, arbitration clause, attorney general, enforceable, activation, initiating, quotation, cellular, consumer, state law, contract of adhesion, statutory rights, injunctive relief, negotiate, vindicate, adhesion, cancel

**COUNSEL:** [*1] For Erik Knutson, Individually and on behalf of all others similarly situated individually and on behalf of other similarly situated, Plaintiff: Abbas Kazerounian, LEAD ATTORNEY, Kazerounian Law Group, Santa Ana, CA; Joshua Swigart, LEAD ATTORNEY, Hyde and Swigart, San Diego, CA.

For Sirius XM Radio Inc., Defendant: Lydia Michelle Mendoza, LEAD ATTORNEY, Manatt Phelps and Phillips, Los Angeles, CA; Rebecca J. Wahlquist, LEAD ATTORNEY, Manatt Phelps & Phillips LLP, Los Angeles, CA.

**JUDGES:** Hon. Anthony J. Battaglia, U.S. District Judge.

**OPINION BY:** Anthony J. Battaglia

**OPINION**

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE**

[Doc. No. 6]

Presently before the Court is Defendant Sirius XM Radio Inc.'s motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* and dismiss the Plaintiff's putative class action in its entirety. [Doc. No. 6.] For the reasons set forth below, the Court GRANTS defendant's motion to compel arbitration and DISMISSES plaintiff's claims.

*Background*

*A. Factual Background*

In November 2011, Plaintiff Erik Knutson purchased a truck that included a 90-day trial subscription to Defendant's satellite radio service. Compl. ¶ 9. Plaintiff's account with [*2] Defendant was activated on November 7, 2011. Ruhland Decl. ¶ 7. During the 90-day trial subscription, Plaintiff claims that he received three unauthorized calls from Defendant on his cellular telephone. Compl. ¶¶ 14-15, 19. Plaintiff alleges that at no time had he provided his cellular telephone number to Defendant or express consent to receive such calls from Defendant. *Id.* at ¶ 10.

On November 29, 2011, Defendant mailed its Welcome Kit, including the Customer Agreement, to

Plaintiff. Ruhland Decl. ¶¶ 10-11. The Customer Agreement, which governed the parties' relationship during the 90-day trial subscription, provided Plaintiff the opportunity to cancel his trial subscription if he did not agree to the terms of the Agreement. Ruhland Decl. Ex. A, at 6. However, the Agreement stated that if Plaintiff did not cancel his subscription within three business days of activation of his receiver, the Agreement would be legally binding on him. *Id.* Defendant asserts that Plaintiff never contacted Defendant to indicate that he did not accept the Agreement's terms or to cancel his trial subscription. Ruhland Decl. ¶ 14.

The Customer Agreement contains an arbitration provision, stating in all-capital [*3] letters that "ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION" and that by agreeing to arbitration, "YOU ARE HEREBY WAIVING THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY ... ." Ruhland Decl. Ex. A, Section I. The arbitration provision requires that either party wishing to bring a claim against the other must wait 60 days after initiating an informal resolution before turning to formal resolution. *See id.*, Section I(1). If a claim has not been informally resolved, the party wishing to bring a claim must initiate arbitration with the American Arbitration Association ("AAA"). *See id.*, Section I(2). The arbitration provision specifically provides that "any claim ... whether related to this Agreement or otherwise ... shall be resolved, upon election by either party, exclusively and finally by binding arbitration." *Id.* Furthermore, the Agreement requires individual arbitration of claims. Specifically, the Agreement provides:

> If either party elects to resolve a claim by arbitration, that Claim shall be arbitrated on an individual basis. There shall be no right or authority for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported [*4] representative capacity on behalf of the general public, other subscribers or other persons similarly situated ... You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any claims submitted to arbitration ("Class Action Waiver") ...

*Id.*, Section I(6).

### B. Procedural Background

On February 15, 2012, Plaintiff filed a class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") against Defendant for initiating unsolicited telephone calls via an Automatic Telephone Dialing System ("ATDS") to cellular telephones, including Plaintiff's cellular telephone. On April 23, 2012, Defendant filed the instant motion to compel arbitration of Plaintiff's claims pursuant to the FAA. Plaintiff filed an Opposition on May 9, 2012, and Defendant filed a Reply on May 18, 2012.

### *Legal Standard*

The FAA governs the enforcement of arbitration agreements involving interstate commerce. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District [*5] Court ... for an order directing that arbitration to proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). In a motion to compel arbitration, the court may not review the merits of the action but must limit its inquiry to "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat. Ass'n*, 673 F.3d 947, 955-56 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *Id.*; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011) (courts [*6] must enforce arbitration agreements according to their terms).

While generally applicable defenses to contract, such as fraud, duress, or unconscionability, invalidate

arbitration agreements, the FAA preempts state-law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. AT&T Mobility, 131 S. Ct. at 1745-47. Because of the strong policy favoring arbitration, doubts are to be resolved in favor of the party moving to compel arbitration. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

## *Discussion*

Defendant requests that the Court compel arbitration of Plaintiff's claim. Plaintiff opposes enforcement of the arbitration provisions on four separate grounds, which are addressed in turn. As explained below, the Court finds that the Customer Agreement contains a valid arbitration clause that is enforceable under the FAA.

### *A. Whether There Was a Binding Contract Requiring Arbitration*

Plaintiff argues that, for any arbitration agreement to be binding on him, Defendant must show a clear mutual manifestation of assent. See Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal.App.3d 987, 992, 101 Cal.Rptr. 347 (Cal. Ct. App. 1972). [*7] Under California law, a party "cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." Marin Storage v. Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal.App.4th 1042, 1049, 107 Cal.Rptr.2d 645 (Cal. Ct. App. 2001). However, an exception to this general rule exists where "the one who signs the instrument is unaware of the contractual provisions," such as "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." Id. at 651.

Plaintiff asserts that he was not aware of the allegedly "inconspicuous contractual provisions" that were "buried in the middle of the Customer Agreement." Pl.'s Opp'n at 11. Plaintiff relies on the holding in Windsor Mills, in which the court stated that "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." See Windsor Mills, 25 Cal.App.3d at 993, 101 Cal.Rptr. 347. However, the Agreement, entitled "Customer Agreement & Website Terms of Use," was included in the Welcome Kit with a welcome [*8] letter regarding Plaintiff's 90-day trial subscription and renewal opportunities. Ruhland Decl. ¶¶ 11-13. The Agreement containing the relevant arbitration clause is only nine pages. Further, the arbitration provision is emphasized in capital letters in a section titled "**RESOLVING DISPUTES**," which includes seven subsections that fill almost half a page of the Customer Agreement, outlining the relevant details of the arbitration agreement. Ruhland Decl. Ex. A, Section I. Thus, the extent of the arbitration provisions in relation to the overall length of the Customer Agreement as well as the use of bolded and capitalized headings counter Plaintiff's position that the arbitration clause is unfairly hidden in the document.

Additionally, Plaintiff challenges the enforceability of the Customer Agreement because it was received over one month after the service was activated. The Customer Agreement states in part that if Plaintiff did not cancel his subscription within three business days of activation of his receiver, the Agreement would be legally binding on him. Ruhland Decl. Ex. A, at 6. Plaintiff claims that because he did not receive Defendant's Customer Agreement until almost a month [*9] after activating his service, he was precluded from the opportunity to accept or reject the terms contained in the Agreement. Pl.'s Opp'n at 8.

The Court finds that the cases cited by Defendant, Bischoff v. DirecTV, Inc., 180 F. Supp. 2d 1097 (C.D. Cal. 2002) and Lozano v. AT&T Wireless, 216 F. Supp. 2d 1071 (C.D. Cal. 2002), are most instructive on the instant matter. Similar to Plaintiff's allegations regarding the delay in time between the activation of services and his receipt of the Agreement, the plaintiff in Bischoff received the Customer Agreement after he had already purchased the DirectTV equipment and after he had activated the service. See Bischoff, 180 F. Supp. 2d at 1101. Nevertheless, the court in Bischoff held that the plaintiff was bound by the arbitration clause of the customer agreement. Id. at 1105; see also Lozano, 216 F. Supp. 2d at 1073 (holding that a customer agreement provided to the purchaser after the contract for service had been signed was enforceable).

Plaintiff attempts to distinguish Bischoff and Lozano from the instant case by arguing that unlike the three-day period to reject the terms of Defendant's Customer Agreement here, the agreements in Bischoff [*10] and Lozano did not have a deadline for rejecting their terms and therefore the plaintiffs were given an opportunity to

accept or reject the terms upon receipt of the agreement. See Pl.'s Opp'n at 8-9. However, although the court in *Bischoff* noted that there was a dispute among the parties about the amount of time between the activation of services and the plaintiff's receipt of the customer agreement, the court did "not find the length of time between the two events dispositive on the issue of whether a valid arbitration agreement exists between the parties." *Bischoff*, 180 F. Supp. 2d at 1105. Instead, the court held that "the more controlling issue is the economic and practical considerations involved in selling services to mass consumers which make it acceptable for terms and conditions to follow the initial transaction." *Id.* The court stated that it is "unrealistic" to expect any programming service provider "to negotiate all of the terms of their customer contracts, including arbitration provisions, with each customer before initiating service." *Id.*; *see also Lozano*, 216 F. Supp. 2d at 1074 (holding that the court "should not require that the cellular telephone service provider [*11] negotiate all of the terms of their customer contracts before initiating service"). Similarly, it would be impractical for Defendant, a large service provider, to negotiate the terms of its Customer Agreement with each consumer prior to activating the service.

Finally, Plaintiff asserts lack of mutual assent to the terms of the Customer Agreement because he did not sign or affirmatively assent to the arbitration provisions. Pl.'s Opp'n at 12-15. Although Plaintiff cites to two cases to support his proposition, Plaintiff failed to point to any case establishing that an arbitration agreement or clause must be signed in order to be valid, except when the parties expressly contemplate that a signature is required to indicate consent. To the extent federal courts have addressed the issue, they have concluded that an agreement to arbitrate may be implied by conduct. *See, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (noting that the "overwhelming weight of authority supports the view that no signature is required to meet the [Federal Arbitration Act's] 'written' requirement," and after the court cited numerous decisions from various jurisdictions, noting [*12] that it "has found no decision to the contrary"). Therefore, Plaintiff's consent to be bound by the Customer Agreement was implied by his decision to continue his 90-day trial subscription. It was not necessary to sign the Agreement.

**B. *Whether Arbitration Allows Plaintiff to Vindicate His Statutory Rights Under the TCPA***

Plaintiff asserts that if he is ordered to arbitration, he will not be able to vindicate his statutory rights under the TCPA because he cannot afford to pay attorneys fees to arbitrate his claims. Pl.'s Opp'n at 15. Plaintiff argues that the Supreme Court has required arbitration of statutory rights only if a prospective litigant "effectively may vindicate" those rights in the arbitral forum. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). Plaintiff cites *In re American Express Merchants' Litigation*, 634 F.3d 187 (2nd Cir. 2011) and *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) as being in tension with *AT&T Mobility*. Plaintiff suggests that *AT&T Mobility*'s vindication of rights analysis is based upon state law unconscionability, and thus permits [*13] state law to invalidate class-action waivers when such waivers preclude effective vindication of statutory rights. Pl.'s Opp'n at 17.

However, the Ninth Circuit recently rejected a similar argument in *Coneff v. AT&T Corp.*, in which the plaintiff argued that the claims alleging violations of state consumer protection laws and the Federal Communications Act could not be vindicated effectively because they were "worth much less than the cost of litigating them." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012). The Ninth Circuit found that the arbitration agreement had "a number of fee-shifting and otherwise pro-consumer provisions," which are also present in Defendant's Customer Agreement. [1] *See id.* Furthermore, the Ninth Circuit stated that the concern that customers would have "insufficient incentive to vindicate their rights ... is a primary policy rationale for class actions" and as the Supreme Court stated in *AT&T Mobility*, "such unrelated policy concerns cannot undermine the FAA." *Id.* (citing *AT&T Mobility*, 131 S.Ct. at 1753).

> 1 Parties may resolve their claims in arbitration conducted in accordance with the consumer-friendly rules and procedures of the American Arbitration [*14] Association ("AAA"). Ruhland Decl. Ex. A, Section I(2); *see also* Mendoza Decl. Ex. A. For example, because Plaintiff's claim is less than $10,000, Plaintiff would only have to pay a minimal filing fee and

Page 6

Defendant would pay the remaining arbitration fees. Mendoza Decl. Ex. A, Section C-8, at 10-11. Alternatively, pursuant to the Customer Agreement, parties may resolve their claims against Defendant in small claims court. Ruhland Decl. Ex. A, Section I(4). Thus, although Plaintiff claims the cost of hiring an attorney to pursue an individual claim is prohibitive, he would be able to pursue his individual claim in small claims court without the need for an attorney.

**C. Whether the Customer Agreement Is Rendered Unenforceable Due to the Request for Injunctive Relief on Behalf of the Public**

Plaintiff also argues that, because he seeks injunctive relief on behalf of the putative class, his claims cannot be compelled to arbitration. Pl.'s Opp'n at 18. The California Supreme Court has held that where the plaintiff is acting as a private attorney general seeking to enjoin future unlawful practices, the arbitral forum is inappropriate and presents a narrow exception to the general rule of FAA [*15] preemption. See *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1082, 90 Cal. Rptr. 2d 334, 988 P.2d 67 (Cal. 1999); *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303, 312, 315-16, 133 Cal. Rptr. 2d 58, 66 P.3d 1157 (Cal. 2003). Plaintiff contends that this rule is not one prohibited by *AT&T Mobility* as an outright ban on arbitration of all injunctive relief claims. Specifically, Plaintiff relies on the holding in *Brown v. Ralph's Grocery Co.*, arguing that the FAA does not prevent Plaintiff's ability to act as a private attorney general for the public good. See *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 500-02, 128 Cal. Rptr. 3d 854 (Cal. Ct. App. 2011) (holding that *AT&T Mobility* and the FAA did not preempt state law regarding the unenforceability of a contractual waiver of the employee's right to pursue a representative action under the Private Attorney General Act of 2004 ("PAGA")). [2]

[2] As Defendant points out in its reply, Plaintiff's citation to *Brown* is misplaced because he has not asserted nor could he assert any PAGA claims, which exist solely to enforce the Labor Code. See *Brown*, 197 Cal.App.4th at 501 (explaining that the purpose of the PAGA is "not to recover damages or restitution, but to create a means of 'deputizing' citizens [*16] as private attorneys general to enforce the Labor Code").

However, the Ninth Circuit has recently held that the *Broughton-Cruz* rule does not survive *AT&T Mobility* because it, too, "prohibits arbitration for claims for public injunctive relief." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 959 (9th Cir. 2012); see also, e.g., *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1050 (N.D. Cal. 2011) (concluding that the FAA preempts the holdings of *Cruz* and *Broughton* because they amount to "state law[s] prohibit[ing] outright the arbitration of a particular type of claim") (quoting *AT&T Mobility*, 131 S.Ct. at 1747). Thus, the Court must enforce the arbitration provision in the Customer Agreement even if this might prevent Plaintiff from acting as a private attorney general.

**D. Whether the Customer Agreement an Unconscionable Adhesion Contract**

Plaintiff contends that the Customer Agreement is an unconscionable adhesion contract and therefore unenforceable. "[I]n assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). Under [*17] California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. See id. Courts use a sliding scale under which the more procedural unconscionability there is, the less substantive unconscionability is required, and vice versa. See *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Davis*, 485 F.3d at 1072-73 (internal quotations omitted). The party opposing arbitration "has the burden of proving the arbitration provision is unconscionable." *Higgins v. Superior Court*, 140 Cal.App.4th 1238, 1249, 45 Cal.Rptr.3d 293 (Cal. Ct. App. 2006) (quotation omitted).

*1. Procedural Unconscionability*

Plaintiff contends that the arbitration provision is procedurally unconscionable because the Customer Agreement is a contract of adhesion. Pl.'s Opp'n at 23-24. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity [*18] to adhere to the contract or reject it." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113, 99 Cal.Rptr.2d 745, 6

Page 7

P.3d 669 (Cal. Ct. App. 2000) (quotation omitted) ("Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion."). A contract of adhesion is procedurally unconscionable when it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" Nagrampa v. MailCoups, 469 F.3d 1257, 1281 (9th Cir. 2006).

Plaintiff has presented evidence that the Agreement was presented on a "take it or leave it" basis, with little or no option for Plaintiff to negotiate. However, in AT&T Mobility, where the contract at issue was a contract of adhesion, the Supreme Court held that California's prohibition on class action waiver in arbitration agreements is preempted by the FAA in part because "[t]he rule [against class action waivers] is limited to adhesion contracts, but the times in which consumer contracts were anything other than adhesive are long past." AT&T Mobility, 131 S.Ct. at 1750. In light of AT&T Mobility, the Court [*19] "does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability." See Rosendahl v. Bridgepoint Educ., Inc., 2012 U.S. Dist. LEXIS 26139, 2012 WL 667049, at *7 (S.D. Cal. Feb. 28, 2012).

Nevertheless, procedural unconscionability may be found when an arbitration provision refers to arbitration rules, but a copy of those rules are not provided to the individual. See Zullo v. Superior Court, 197 Cal.App.4th 477, 485, 127 Cal.Rptr.3d 461 (Cal. Ct. App. 2011) ("The absence of the AAA (American Arbitration Association) arbitration rules adds a bit to the procedural unconscionability."). In this case, the arbitration provision provides that the party initiating arbitration must follow the rules and procedures of the AAA. Ruhland Decl. Ex. A, Section I(2). Plaintiff was not provided a copy of the rules of the AAA. The Court finds that the absence of the rules of the AAA "adds" to the procedural unconscionability. See Zullo, 197 Cal.App.4th at 485.

Therefore, the Court finds that the arbitration provision in the Customer Agreement contains elements of procedural unconscionability.

### 2. Substantive Unconscionability

"Substantive unconscionability relates to the effect of the contract [*20] or provision. A lack of mutuality is relevant in analyzing this prong. The term focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." Davis, 485 F.3d at 1075 (quotation omitted) (emphasis in original). "A determination of substantive unconscionability involves whether the terms of the contract are unduly harsh or oppressive." Id. (quotation omitted).

Plaintiff contends that the Customer Agreement has a harsh and oppressive effect on him. Pl.'s Opp'n at 24. Specifically, Plaintiff argues that, given the short time frame in which Plaintiff could reject the terms of the Agreement as well as the fact that Plaintiff received the Agreement over one month after the activation of the receiver, deprived Plaintiff of "the opportunity to willingly enter into the contract." Id. at 24-25. However, Plaintiff fails to discuss the substantive terms of the arbitration provision.

Courts require arbitration agreements to contain a "modicum of bilaterality." See Armendariz, 24 Cal.4th at 117, 99 Cal.Rptr.2d 745. There is no bilaterality if the arbitration agreement "compels arbitration of the claims more likely to be brought by the weaker party but exempts [*21] from arbitration the types of claims that are more likely to be brought by the stronger party." Fitz v. NCR Corp., 118 Cal.App.4th 702, 724, 13 Cal.Rptr.3d 88 (Cal. Ct. App. 2004) (citation omitted). Arbitration agreements limited the amount of damages that would otherwise be available in court are also substantively unconscionable. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003). To determine whether the arbitration agreement is sufficiently bilateral, courts should "look beyond facial neutrality and examine the actual effects of the challenged provision." Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003).

The arbitration provision provides for neutral arbitration. See Ruhland Decl. Ex. A, Section I(2) (stating that "the arbitration shall be administered by the AAA"). Parties in arbitration can receive the same damages that would otherwise be available in court. Id., Section I(5) ("[A] party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines."). Other than a $125 maximum filing fee, which would be reimbursed if the Plaintiff prevails, the Plaintiff does not have to pay arbitrators' fees for claims [*22] less than $10,000. Id.; see also Mendoza Decl. Ex. A, Section C-8, at 10-11 (providing that if the claim does not exceed $10,000, the party who files the arbitration is

responsible for the arbitrator's fees up to a maximum of $125). Thus, the Customer Agreement is not unconscionable.

Therefore, the Court finds that Defendant has satisfied the standard for compelling arbitration with regard to Plaintiffs individual claim. There is an agreement between the parties to arbitrate and the claim at issue falls within the scope of the Agreement. Further, the Court finds that the Agreement contains all the hallmarks of substantive conscionability. Accordingly, the Court finds the arbitration clause to be valid and enforceable under the FAA.

## CONCLUSION

For the reasons set forth above, the Court GRANTS defendant's motion to compel arbitration and DISMISSES plaintiffs claims.

IT IS SO ORDERED.

DATED: May 30, 2012

/s/ Anthony J. Battaglia

Hon. Anthony J. Battaglia

U.S. District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2012, a copy of the foregoing Notice of Recent Supplemental Authority Re: Defendant's Motion to Compel Arbitration and To Stay Action was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

By:    /s/ *Lisa M. Simonetti*
           Lisa M. Simonetti

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

NOTICE OF RECENT SUPPLEMENTAL AUTHORITY
Case No. 3:11-cv-01822-BTM-BGS

LA 51548960v1